# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EUGENE MARTIN LAVERGNE, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 17-793 (CKK-CP-RDM) |
| UNITED STATES HOUSE OF REPRESENTATIVES, *et al.*, | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Eugene Martin LaVergne ("LaVergne") and four co-plaintiffs bring this action, proceeding *pro se*, alleging that a constitutional amendment that was proposed in 1789 was, unbeknownst to most, ratified over 225 years ago. That amendment, they further allege, worked a dramatic change to the structure of our government by requiring that the House of Representatives include at least one representative for every 50,000 persons in the United States. If true, that would mean that the current House of Representatives should have at least 6,230 members, and, under Plaintiffs' theory, it would mean that all of the acts of the current Congress are invalid for lack of a quorum in the House. It would also mean that the states would need to conduct new elections to fill thousands of additional seats.

This is not the first time that LaVergne has asked a federal court to consider this claim. The last time he did so, the U.S. District Court for the District of New Jersey dismissed his complaint *sua sponte*, *LaVergne v. Bryson*, No. 11-7117, 2011 WL 13192893 (D.N.J. Dec. 16, 2011), and the Court of Appeals for the Third Circuit summarily affirmed that decision, *LaVergne v. Bryson*, 497 F. App'x 219 (3d Cir. 2012). The question currently before this Court

is whether LaVergne is precluded from re-litigating those same claims. For the reasons

explained below, the Court concludes that he is. The Court will, accordingly, **DISMISS** all

claims asserted by Eugene Martin LaVergne in this matter.

## I. BACKGROUND

**A.      LaVergne's Claims**

For present purposes, the Court need only briefly describe the claims that LaVergne and

his co-plaintiffs assert in this action. Their allegations start in 1789, when the First Congress

proposed to the state legislatures twelve amendments to the recently ratified Constitution, ten of

which would ultimately become the Bill of Rights. As reflected in "the original 14 hand

engrossed Resolutions proposing" the amendments, Am. Compl. 37, ECF No. 4, "Article the

First" provided:

> After the first enumeration required by the first article of the constitution, there
> shall be one representative for every thirty thousand, until the number shall
> amount to one hundred, after which the proportion shall be so regulated by
> Congress, that there shall be not less that one hundred representatives, nor less
> than one representative for every forty thousand persons, until the number of
> representatives shall amount to two hundred; after which the proportion shall
> be so regulated by Congress, that there shall not be less than two hundred
> representatives, nor more than one representative for every fifty thousand
> persons.

*Id.* at 156 (Ex. J). According to LaVergne, however, this text contained a "Scrivener's error."

*Id.* at 37. Although the final clause, as printed, stated that the House of Representatives must

include no "*more* than one representative for every fifty thousand persons," LaVergne alleges

that the version of the resolution approved by the House and Senate stated that the Congress

must include no "*less* than one Representative for every fifty thousand persons." *Id.* at 38–39

(emphasis added). He acknowledges, however, that the version including the word "more" was

used in "the first official printing" of the resolution and in "all subsequent 'corrected' printings

thereafter." *Id.* at 39.

Under LaVergne's theory, this was just the first mistake. Article the First, according to most history books, was never ratified by three-fourths of the states and thus never became law. In LaVergne's view, however, that understanding of history is wrong for two reasons. First, he posits that the state of Connecticut, contrary to popular belief, ratified Article the First in 1789 or 1790. *Id.* at 28. He reaches this conclusion by arguing that actions taken by the upper and lower houses of the Connecticut legislature in different sessions were sufficient for purposes of Article V of the Constitution, which requires "ratifi[cation] by the Legislatures of three fourths of the several States." U.S. Const. art. V. In particular, in 1789 the lower house of the Connecticut legislature ratified the proposed amendment but the upper house failed to act, and in 1790 the upper house ratified the amendment but the lower house did not. *See* Mot. Dismiss Ex. 1, ECF No. 65-4 (Thomas H. Le Duc, *Connecticut and the First Ten Amendments to the Federal Constitution*, S. Doc. No. 75-96 (1937)). Second, he argues that Kentucky ratified the proposed amendment in 1792, and that its ratification is effective, even though Kentucky never officially reported its action. Am. Compl. 26, 30. Thus, LaVergne argues, Article the First has been "ratified by the State Legislatures of three fourths of the States . . . since at least June 21, 1792, if not earlier." *Id.* at 30.[1]

Putting these pieces together, LaVergne contends that the proposed Article the First required a representative for every 50,000 people in the United States and that it was ratified in 1790 or 1792. As a result, he further alleges, the actual "First Amendment" to the Constitution

---

[1] LaVergne argued in the *Bryson* litigation and argues in his motion for summary judgment in this case that it is permissible to "round[] down" the number of states necessary to reach the "three fourths" threshold. Memorandum of Law in Support of Motion for Preliminary Injunction at 58–61, *LaVergne v. Bryson*, No. 11-7117 (D.N.J. Dec. 16, 2011) [hereinafter *Bryson* PI Mem.]; *see also* Mot. Summ. J. 16–17 n.1, 19, ECF No. 54.

requires that there be at least 6,230 members of the United States House of Representatives. The states must, accordingly, hold elections to fill these positions; the federal government must conduct a new apportionment; and the House cannot act without a quorum of at least 3,116 members.

## B.     Previous Litigation

On December 6, 2011, LaVergne filed a similar complaint in the U.S. District Court for the District of New Jersey. That case, *LaVergne v. Bryson*, named some, but not all, of the same defendants named in this case. *Compare* Complaint at 1, *LaVergne v. Bryson*, No. 11-7117 (D.N.J. Dec. 16, 2011) [hereinafter *Bryson* Compl.], *with* Am. Compl. 1–16. As in the present case, LaVergne alleged in *Bryson* that Article the First was ratified and that, as a result, the decennial apportionment of the House and the statute authorizing that apportionment, 2 U.S.C. § 2a, are unconstitutional. *See Bryson* Compl. 25–31, 37–41. Along with his complaint, LaVergne filed a motion for an order to show cause why the district court should not issue a preliminary injunction, writ of mandamus, and declaratory judgment, and he requested that a three-judge court hear and determine his case. *See* Proposed Order Show Cause, *LaVergne v. Bryson*, No. 11-7117 (D.N.J. Dec. 16, 2011). Among other theories of relief, LaVergne argued, as he does here, that Article the First was fully ratified when the Kentucky legislature approved it on June 24, 1792. *See Bryson* PI Mem. 58–61; Am. Compl. 28–30. At that point, LaVergne did not make a similar argument with respect to Connecticut. *See Bryson* PI Mem. 58–61; *see also Bryson* Compl. 27–30.

In response to LaVergne's motions, the district court did three things. First, it denied LaVergne's motion for an order to show cause, principally on the ground that LaVergne had failed to show that expedited consideration of events that occurred over two centuries ago was warranted. *Bryson*, 2011 WL 13192893, at *1. Second, it declined to convene a three-judge

court on the ground that LaVergne's claims were "wholly insubstantial or completely without merit." *Id.* (quoting *United States v. Saint Landry Par. Sch. Bd.*, 601 F.2d 859, 863 (5th Cir. 1979)). Third, it dismissed LaVergne's complaint *sua sponte*. *Id.* at *2.

In explaining its decision, the district court identified four considerations: First, the court reasoned, "recent case law suggest[ed]" that the "convention of a three-judge panel [was] not required." *Id.* The court then cited to the Supreme Court's 2010 order vacating the merits decision of a three-judge court in a reapportionment case and remanding the action with instructions to dismiss the complaint for lack of jurisdiction. *Id.* (citing *Clemons v. U.S. Dep't of Commerce*, 562 U.S. 1105 (2010) (mem.) (vacating and remanding 710 F. Supp. 2d 570 (N.D. Miss. 2010))). The *Bryson* court continued:

> Second, Plaintiff's standing is questionable when his interest is considered in relation to individuals such as New Jersey Governor Chris Christie, who implemented the redistricting; Congresspersons whose seats were abolished; and presidential candidates who may fear an election result like that of Vice President Gore, who had won the popular vote but lost in the electoral college vote to George Bush. Third, the ability of a pro se Plaintiff who is suspended from the practice of law to professionally and adequately represent such a case which [a]ffects every state is tenuous. Finally, the longstanding principles establishing representation in our republican form of government have been thoroughly evaluated since the Constitutional Convention.

*Id.* (footnote omitted).

On appeal, LaVergne argued that the district court erred in concluding that it lacked jurisdiction, erred in declining to convene a three-judge court, and erred in dismissing his claims. Rather than seek a remand, however, he requested that the Court of Appeals "determine [his] [c]onstitutional claims *de novo* in a summary manner" and issue an injunction in the first instance. Brief of Appellant at 30, *LaVergne v. Bryson*, 497 F. App'x 219 (3d Cir. 2012) (No. 12-1171) [hereinafter *Bryson* Appellant's Br.]. By this time, moreover, LaVergne had refined

his theory regarding the alleged ratification of Article the First, arguing that both Kentucky and Connecticut had ratified the proposed constitutional amendment. *Id.* at 4–5.

The Third Circuit summarily affirmed the district court's dismissal in a per curiam opinion. *LaVergne v. Bryson*, 497 F. App'x 219, 220 (3d Cir. 2012). As an initial matter, the panel agreed with the district court that LaVergne lacked standing. *Id.* at 221. The court rejected LaVergne's reliance on cases involving vote dilution as a basis for establishing standing, noting that the remedy that LaVergne sought—an increase in representation for all of the states—would not "change the size of New Jersey's congressional delegation relative to the size of other states' delegations." *Id.* Moreover, "at most" LaVergne "allege[d] 'a type of institutional injury' . . . 'which necessarily damages' all United States voters 'equally.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 821 (1997)).

With respect to LaVergne's Article the First claim, the Third Circuit also based its decision on the alternative ground that the claim was non-justiciable. *Id.* at 222. As the panel explained:

> Putting aside the considerable factual and historical problems with [LaVergne's] argument, "[t]he issue of whether a constitutional amendment has been properly ratified is a political question." *United States v. McDonald*, 919 F.2d 146, 1990 WL 186103 (table), at *3 (9th Cir.1990) (per curiam) (citing *Coleman v. Miller*, 307 U.S. 433, 450 (1939)). In *Coleman*, the Supreme Court held that "the question of the efficacy of ratifications by state legislatures . . . should be regarded as a political question pertaining to the political departments, with the ultimate authority in the Congress in the exercise of its control over the promulgation of the adoption of the amendment." 307 U.S. at 450. *See also Luther v. Borden*, 48 U.S. (7 How.) 1, 39 (1849) (holding that "the political department has always determined whether the proposed constitution or amendment was ratified or not by the people of the State, and the judicial power has followed its decision"); *United States v. Foster*, 789 F.2d 457, 463 n.6 (7th Cir. 1986) (holding that the issue of "the validity of an amendment's ratification [is] a non justiciable political question" and citing, among other cases, *Leser v. Garnett*, 258 U.S. 130, 137 (1922), and *Coleman*, 307 U.S. at 450.

*Id.* (alterations in original).  With respect to two other claims that LaVergne pressed in that case, but does not press here—non-delegation and separation of powers—the panel held that, even if justiciable, those claims failed on the merits.  *Id.*

Finally, the Third Circuit rejected LaVergne's contention that the district court erred in denying his request to convene a three-judge court.  The panel concluded that LaVergne had waived this argument by failing to make anything more than "passing references to [the] issue" in his appellate brief, *id.* at 223 (quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004)), but, to the extent LaVergne did raise the issue, he did "not seek reversal on [that] basis, or remand, but rather" conceded that the panel's review of his claims would "suffice[]."  *Id.*

LaVergne filed a timely petition for writ of certiorari, which the Supreme Court denied. *LaVergne v. Blank*, 568 U.S. 1161 (2013).

Years later, after Defendants moved to dismiss LaVergne's claims in the present action, LaVergne returned to the federal district court in New Jersey and filed a Rule 60(b)(4) motion. *See* Post Judgment Motion Under Rule 60(b)(4), *LaVergne v. Bryson*, No. 11-7117 (D.N.J. Apr. 2, 2018) [hereinafter *Bryson* Rule 60(b) Mot.].  That motion requested that the *Bryson* court vacate its previous decision on the ground that the court was empowered to act only as a three-judge court and thus, when acting through a single judge, it lacked subject-matter jurisdiction. *See Bryson* Rule 60(b) Mot. 7.  The *Bryson* court denied LaVergne's motion, explaining that it had subject-matter jurisdiction to dismiss the case because its "2011 order was not based on the merits of Plaintiff's claim; rather, as the Third Circuit affirmed, predicated on a lack of standing and justiciability."  *LaVergne v. Bryson*, No. 11-7117, slip op. at 2 (D.N.J. Apr. 2, 2018).

**C.     Procedural History**

Plaintiffs filed this action on April 28, 2017, Compl., ECF No. 1, and they filed an amended complaint on May 9, 2017, Am. Compl.  The amended complaint names as defendants the United States, various federal officials, the House, the Senate, every member of the House and Senate (collectively, the "Federal Defendants"), and delegations from each of the fifty states (collectively, the "State Defendants").  *See id.* at 1–16.  Plaintiffs include Eugene Martin LaVergne and his co-plaintiffs, Frederick LaVergne, Leonard Marshall, Scott Neuman, and Allen Cannon.  *Id.* at 1.  They seek the following relief: (1) mandamus against state officials in Kentucky, Connecticut, and Virginia to provide "official notice" of their states' "unreported ratification" of Article the First, *id.* at 36–37; (2) mandamus against the Archivist of the United States to "immediately declare, certify and publish that *Article the First* []as having become valid . . . as a part of the Constitution of the Un[ited] States," *id.*; (3) an order "correct[ing]" the language of Article the First under the "Scrivener's Error Doctrine" by replacing the second "less" with "more," *id.* at 40; (4) a declaratory judgment that the apportionment statute, 2 U.S.C. § 2a, is unconstitutional, *id.* at 59; (5) mandamus against various state and federal officials to create, transmit, and implement an amended apportionment scheme, *id.* at 59–66; (6) a declaratory judgment that all actions by the 115th Congress are invalid because the requisite quorum was not present, *id.* at 67; and (7) an injunction preventing any member of the House of Representatives from conducting business until the requisite number of representatives under Article the First are sworn in, *id.* at 67, 73–74, 76–77.

Now before the Court are the State and Federal Defendants' motions to dismiss LaVergne's claims on grounds of claim and issue preclusion.  *See* Mot. Dismiss (State Defs.), ECF No. 64; Mot. Dismiss (Fed. Defs.), ECF No. 65.  Also before the Court is LaVergne's 60(b) motion "collaterally attacking" the New Jersey district court's 2011 order dismissing LaVergne's

suit and the Third Circuit's 2012 decision affirming that order, 60(b) Mot., ECF No. 69, and LaVergne's motion for the imposition of Rule 11 sanctions against Defendants for "filing and pursuing legally frivolous . . . motion[s] to dismiss," Sanctions Mot., ECF No. 104. Because Eugene Martin LaVergne is barred from bringing suit under the doctrine of issue preclusion, this Court will grant the Federal and State Defendants' motions and will dismiss all of LaVergne's claims. The Court will also deny LaVergne's Rule 60(b) motion and his motion for sanctions.

## II. ANALYSIS

The pending motions pose the following question: Having unsuccessfully pursued his Article the First claim in federal court over six years ago, is LaVergne entitled to try again? According to Defendants, the answer to that question is no. In their view, he previously filed suit alleging that Article the First was ratified by 1792; he was unsuccessful for two reasons—non-justiciability and lack of standing—and he is not entitled to relitigate those issues. LaVergne disagrees, principally for two reasons. First, he contends that the district court in the *Bryson* case lacked jurisdiction because it was not constituted as a three-judge court as required by statute, and the Third Circuit lacked jurisdiction to consider any question on appeal other than whether the district court exceeded its jurisdiction. Second, he argues that he never had the opportunity fully and fairly to litigate his earlier claims. In addition, LaVergne separately requests that this Court set aside the district court's judgment and the Third Circuit's affirmance in *Bryson* on the ground that neither court had jurisdiction to address any issue other than the need to convene a three-judge court.

## A. Motions to Dismiss

The doctrine of issue preclusion, or collateral estoppel, "bars successive litigation of 'an issue of fact or law' that '[was] actually litigated and determined by a valid and final judgment,

and [that was] essential to the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting

Restatement (Second) of Judgments § 27 (1980) [hereinafter Restatement]). By promoting

"judicial finality," *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992),

the doctrine reduces unnecessary expense to litigants, conserves judicial resources, and "fosters

reliance on judicial action by minimizing the possibility of inconsistent decisions," *Montana v.*

*United States*, 440 U.S. 147, 153–54 (1979). To invoke the defense, the moving party must

show that (1) "the same issue now being raised [was] contested by the parties and submitted for

judicial determination in the prior case"; (2) "the issue [was] actually and necessarily determined

by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case

[will] not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't*

*of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha*, 961 F.2d at 254). In

considering the preclusive effect of a prior litigation, "it is the prior judgment that matters, not

the court's opinion explicating the judgment." *Yamaha*, 961 F.2d at 254.

Defendants contend that the *Bryson* litigation resolved two issues that also dispose of

LaVergne's claims in this case; in their view, the *Bryson* judgment precludes "LaVergne from

establishing . . . the justiciability of his claims [and from establishing] his standing to litigate

them." Mem. Supp. Fed. Defs.' Mot. Dismiss 9, ECF No. 65-1. As an initial matter, the Court

notes that it is far from clear that *Bryson* precludes LaVergne from arguing that he has standing

in the present case. The Third Circuit premised its finding of lack of standing on two grounds:

LaVergne failed to allege facts sufficient to show that his vote was diluted by the failure of

Congress and the states to implement Article the First, and LaVergne failed to allege "a

sufficiently personal injury to establish standing." *Bryson*, 497 F. App'x at 221. In the present

case, in contrast, LaVergne identifies particular legislation that he contends has been, or is likely

to be, enacted in the absence of the expanded quorum that he claims Article the First requires, and he alleges that that legislation has, or will, cause him particularized injury. *See* Am. Compl. 69–70, 75–77. Although this theory of standing faces substantial hurdles, issue preclusion is not necessarily one of them. Under the "curable defect" exception to issue preclusion, a litigant "whose claim[] [was] dismissed on jurisdictional grounds" is not precluded from re-litigating that dismissal "if a material change following dismissal cured the original jurisdictional deficiency." *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015). That is at least arguably the case here.

The Court need not, however, decide that question because there is not even a suggestion that the Third Circuit's justiciability holding turned on any fact or circumstance that has changed since 2012. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983) (explaining that the "curable defect" exception is available only where "occurrences subsequent to the original dismissal" have "remedied" the "jurisdictional deficiency" (emphasis omitted)). To the contrary, the Third Circuit relied solely on the proposition that "whether a constitutional amendment has been properly ratified is a political question" and thus non-justiciable. *Bryson*, 497 F. App'x at 222 (quoting *McDonald*, 919 F.2d 146, 1990 WL 186103 (table), at *3). The Court will, accordingly, focus exclusively on the question whether LaVergne is precluded from relitigating that determination.[2]

1. *Was the Same Issue Raised, Contested, and Submitted for Determination?*

The first issue preclusion factor asks whether "the same issue now being raised [was] contested by the parties and submitted for judicial determination." *Martin*, 488 F.3d at 454

---

[2] In light of the Court's holding, it also need not—and will not—address the State Defendants' separate claim preclusion, or res judicata, argument. *See* Mem. Supp. St. Defs.' Mot. Dismiss 6–8, ECF No. 64-1.

(quoting *Yamaha*, 961 F.2d at 254). Although the political question doctrine is a jurisdictional limitation "imposed upon federal courts by the 'case or controversy' requirement of Art[icle] III," *Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1262 (D.C. Cir. 2006) (alteration in original) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language."), that makes no difference for purposes of issue preclusion. At least in the absence of intervening changes in the factual predicate, issue preclusion "applies to threshold jurisdictional issues" to the same extent it applies to merits determinations. *Nat'l Ass'n of Home Builders*, 786 F.3d at 41; *see also* 18A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4436 (2d ed. 2008) ("Dismissals for want of justiciability are controlled by the same principles as apply to want of subject-matter jurisdiction."). "The judgment ordering dismissal" for lack of jurisdiction, accordingly, will "preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal." *GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987)); *see also Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982); *Coll. Sports Council v. Dep't of Educ.*, 465 F.3d 20, 22–23 (D.C. Cir. 2006); *Dozier*, 702 F.2d at 1191; *Patock v. U.S. Dep't of the Interior*, 873 F. Supp. 2d 251, 255 (D.D.C. 2012).

The critical question, instead, is whether the same issue raised in the present litigation was "actually litigated" by the parties in the previous action. *See* Restatement § 27. An issue was "actually litigated," in turn, if it was "contested by the parties and submitted for determination by the court." *Otherson v. Dep't of Justice, I.N.S.*, 711 F.2d 267, 273 (D.C. Cir. 1983). Here, there is no doubt that the *Bryson* defendants "contested" the justiciability of

12

LaVergne's Article the First claim and that they "submitted" the issue "for determination by the court."  One need look no further than the "Statement of Issues" section of the *Bryson* defendants Third Circuit brief, which raised the issue in unmistakable terms: "Is Mr. LaVergne's claim that 'Article the First' actually was ratified a non-justiciable political question?  Answer:  Yes."  *See* Brief of Appellees John A. Boehner & Karen L. Haas at 1, *LaVergne v. Bryson*, 497 F. App'x 219 (3d Cir. 2012) (No. 12-1171) [hereinafter *Bryson* Appellees' Br.].  They then devoted an entire section of their brief to the contention that LaVergne's Article the First claim raised a non-justiciable political question.  *Id.* at 35–38.  In doing so, moreover, they invoked the relevant authority, including *Baker v. Carr*, 369 U.S. 186 (1962), which sets forth the governing test for the political question doctrine, and *Coleman*, 307 U.S. at 450, which held that the question whether a constitutional amendment has been ratified "should be regarded as a political question pertaining to the political departments."  *Bryson* Appellees' Br. 35–38 (quoting *Coleman*, 307 U.S. at 450).

The fact that LaVergne offered, at best, an incomplete and oblique response to this argument, moreover, is immaterial.  *See* Appellant's Reply Brief at 2, *LaVergne v. Bryson*, 497 F. App'x 219 (3d Cir. 2012) (No. 12-1171) (asserting that his Article the First claim "is a factual and legal *claim* entitled to an Article III forum").  He was on clear notice that the defendants had raised the issue; he did not by any means concede or admit it, and, indeed, continued to press the Third Circuit for a decision on the merits of his Article the First claim; and he simply chose not to—or was unable to—offer a substantial response to the argument.  *See id.*  The doctrine of issue preclusion would have little force, and would not serve its purposes, if a party could avoid the preclusive effect of a judgment by continuing to press for relief while glossing over difficult counterarguments.  *See* Restatement § 27 cmt. e ("When an issue is properly raised, by the

pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.").

There is also no question that this case raises the "same" justiciability issue raised in *Bryson*. In this case, as in *Bryson*, LaVergne's claims stand on the premise that the states ratified Article the First no later than 1792. And, as in *Bryson*, this Court cannot resolve that question without first deciding whether the claim is justiciable. As a result, there is a "total identity" between the justiciability issue raised in *Bryson* and the justiciability issue raised here. Restatement § 27 cmt. c (explaining that, although "total identity" is not required, "difficult problems" may be presented when "delineat[ing] the issue on which litigation is, or is not, foreclosed"). Indeed, as far as we can discern, LaVergne does not argue otherwise.

We, therefore, conclude that the same issue now being raised was contested and submitted for judicial resolution in the *Bryson* case.

2.      *Was the Issue Necessarily Determined by a Court of Competent Jurisdiction?*

The second preclusion factor considers whether the issue was "actually and necessarily determined by a court of competent jurisdiction in [the] prior case." *Martin*, 488 F.3d at 454 (quoting *Yamaha*, 961 F.2d at 254). LaVergne does not, nor could he, question that the Third Circuit actually decided the issue. The court wrote in unmistakable terms that LaVergne's claim failed on grounds of justiciability, and it explained its rationale by relying, as the *Bryson* defendants did in their brief, on the Supreme Court's decision in *Coleman*. *See Bryson*, 497 F. App'x at 222.

The question whether the *Bryson* case "necessarily" decided the issue is slightly more complicated. As explained above, both the district court and the Third Circuit premised their decisions on multiple grounds. The Third Circuit, in particular, was clear that the district court

14

lacked jurisdiction to consider LaVergne's Article the First claim because LaVergne did not have standing and because his claim raised a non-justiciable political question. *Bryson*, 497 F. App'x at 221–22. One might, as a result, argue that the Third Circuit's non-justiciability holding was not necessary to its judgment, and thus LaVergne is not precluded from relitigating that issue. In other words, is a holding necessary to support a judgment when the court identifies an independently sufficient alternative holding?

As the D.C. Circuit has observed, "[t]he cases and commentators are divided on this issue—and understandably so, since a real dilemma is presented." *Dozier*, 702 F.2d at 1193–94 (footnote omitted). On the one hand, a rule declining to give preclusive effect to alternative grounds for a decision would mean that a case that "is doubly inadequate can be" relitigated, while "a case inadequate in only one respect cannot." *Id.* at 1194. But, on the other hand, a rule that gives preclusive "effect to both grounds leaves the losing party who concedes the adequacy of one [ground of decision] no appellate remedy for the patent invalidity of the other except [to file] a frivolous appeal." *Id.*

The Restatement (Second) of Judgments and the D.C. Circuit have offered a set of rules to help navigate this dilemma.[3] To avoid the risk that a losing party might decline to appeal a

---

[3] There is some question as to whether the precedent of the circuit in which a three-judge district court sits is binding on that court. *See* Joshua Douglas & Michael Solimine, *Precedent, Three-Judge District Courts, and the Law of Democracy*, 107 Geo. L. J. (forthcoming 2018), *available at* https://ssrn.com/abstract=3099771. A three-judge court's decision is generally subject to review only by the Supreme Court, 28 U.S.C. § 1253, and the doctrine of *stare decisis* "commands that lower courts follow the precedent of courts who review their decisions." *Parker v. Ohio*, 263 F. Supp. 2d 1100, 1112 n.3 (S.D. Ohio 2003) (Gwin, J., concurring). Under this framework, "logic suggests that we are not bound by circuit authority." *Id.* Congress, however, created this structure "not [as] a grant of authority with elevated precedential stature but a withdrawal of power from a single judge." *Russell v. Hathaway*, 423 F. Supp. 833, 835 (N.D. Tex. 1976). Moreover, failure to follow circuit law may create a lack of uniformity within the circuit. *Id.* This Court need not, however, weigh in on this debate. Even if precedent of the D.C. Circuit is not binding on this Court, it is highly persuasive.

dubious ground of decision because an alternative ground of decision is unquestionably sound, the commentary to the Restatement provides: "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement § 27 cmt. i. But, to avoid the prospect that a decision rejecting a claim as "doubly inadequate" might lack preclusive effect, the Restatement provides: "If [a] judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, . . . the judgment is conclusive as to both determinations." Restatement § 27 cmt. o. Although the D.C. Circuit has yet to decide whether both prongs of this approach are required, it has held that, if the losing party pursues an appeal that fails on both grounds, the dilemma is avoided and "the dismissal on each ground" is entitled to preclusive effect. *Dozier*, 702 F.2d at 1194; *see also Malyutin v. Rice*, 854 F. Supp. 2d 38, 47 (D.D.C. 2012) (noting that *Dozier* uses "'res judicata' as the umbrella term for preclusion").

This framework resolves the question presented here. The Third Circuit was not the court of first instance, and it based its determination on two independently sufficient grounds. LaVergne was not dissuaded from appealing the district court's judgment, and he was not dissuaded from filing a petition for a writ of certiorari seeking review of the Third Circuit's justiciability determination, *see* Petition for a Writ of Certiorari, *LaVergne v. Blank*, 568 U.S. 1161 (2013) (No. 12-778). The only wrinkle is that it is not entirely clear that the district court dismissed LaVergne's complaint on the same two grounds as the Third Circuit, at least raising the possibility that the Court of Appeals was in a sense the "court of first instance" with respect to the justiciability issue.

On balance, we conclude for two reasons that the district court did rely on the political question doctrine. First, the district court held that it was not required to constitute a three-judge court in light of the Supreme Court's order in *Clemons*, which directed that the three-judge court in that case "dismiss the complaint for lack of jurisdiction," 562 U.S. at 1105. *Bryson*, 2011 WL 13192893, at *2. Although the Supreme Court did not provide reasons for that order, the sole jurisdictional argument that the government pressed before the three-judge district court was the political question doctrine, and, the three-judge court addressed that jurisdictional issue (and no other jurisdictional issue) at length.[4] *See Clemons*, 710 F. Supp. 2d at 573–75. Against this backdrop, it is reasonable to infer that the Supreme Court relied on this ground, and, in any event, it is more than reasonable to infer that the *Bryson* court cited *Clemons* for just this reason. That conclusion, moreover, finds further support in the *Bryson* court's reference to "our republican form of government," *Bryson*, 2011 WL 13192893, at *2, language that evokes the Guarantee Clause of the Constitution, U.S. Const. art. IV, § 4 ("The United States shall guarantee to every State in this Union a Republican Form of Government"), and case law holding that claims that rest on the Guarantee Clause are non-justiciable, *see Baker*, 369 U.S. at 209.

But, even if we were to conclude that the district court did not base its decision on the political question doctrine, we would still conclude that the Third Circuit's clear reliance on that doctrine is entitled to preclusive effect. Had the Third Circuit relied on this ground alone, there would be no doubt that the determination would be preclusive, and we fail to see why the Third Circuit's alternative determination that LaVergne lacked standing should change that result. The

---

[4] The government initially moved to dismiss on four grounds—statute of limitations, standing, laches, and the political question doctrine—but, by the time of oral argument, it "had abandoned" all of these arguments "except for the last." *Clemons*, 710 F. Supp. 2d at 573.

political question defense was subject to careful consideration by the Third Circuit, *see* Restatement § 27 cmt. o (preclusion available if "the losing party has . . . obtained an appellate decision on the issue"), and there is no reason to believe that the court's alternative holding discouraged LaVergne from seeking further review of the court's justiciability decision. To the contrary, LaVergne filed a cert petition raising the issue. Under these circumstances, "the balance tips in favor of preclusion." *Id.*; *see also Dozier*, 702 F.2d at 1194 (declining to decide the "more general question" because, in that case, "the losing party did pursue an appeal").

In LaVergne's view, the fundamental problem is not that the Third Circuit failed to decide the issue or that it rested its decision on alternative grounds; rather, he asserts, the problem is that the issue was not decided "by a court of competent jurisdiction." *Martin*, 488 F.3d at 454 (quoting *Yamaha*, 961 F.2d at 254). In support of this contention, LaVergne relies on 28 U.S.C. § 2284, which provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a). He argues that, under this statute, the single district court judge who dismissed his claims in the *Bryson* case lacked jurisdiction, and he argues that the Third Circuit's appellate jurisdiction was limited to deciding whether the district court had exceeded its jurisdiction. *See* Pl.'s Mem. Opp'n Mot. Dismiss 19–22, 25–27, ECF No. 70. As a result, LaVergne continues, any conclusions that either court may have made regarding the justiciability of his Article the First claim was made without jurisdiction and, accordingly, cannot provide a basis for preclusion. *Id.* at 31–42. We are unpersuaded.

LaVergne ignores a long line of precedent holding that "[a] three-judge court is not required where the district court itself lacks jurisdiction [over] the [plaintiff's claims] or [those claims] are not justiciable in the federal courts." *Gonzalez v. Automatic Emps. Credit Union*,

419 U.S. 90, 100 (1974); *see also Wertheimer v. FEC*, 268 F.3d 1070, 1072 (D.C. Cir. 2001);

*LaRouche v. Fowler*, 152 F.3d 974, 981 (D.C. Cir. 1998); *Reuss v. Balles*, 584 F.2d 461, 464 n.8

(D.C. Cir. 1978); *Lion Mfg. Corp. v. Kennedy*, 330 F.2d 833, 840–41 (D.C. Cir. 1964).  In the

words of the D.C. Circuit, Section 2284

> assumes jurisdiction in the District Court over the controversy, and its
> provisions come into play only when that jurisdiction exists.  It remains for the
> judge who is asked to convene a three-judge court to determine whether
> jurisdiction exists in the District Court; and, if he properly concludes there is
> no jurisdiction, his power to dismiss the complaint, as well as to deny the
> motion to convene a three-judge tribunal, is in no way circumscribed by
> Section 2284.

*Lion Mfg.*, 330 F.2d at 840–41.  That conclusion, moreover, finds support in the text of Section

2284, which precludes "[a] single judge" from "enter[ing] judgment *on the merits*" but does not

include a similar proscription on dismissing an action for lack of jurisdiction or as non-

justiciable.  28 U.S.C. § 2284(b)(3) (emphasis added).  Nor has this understanding of Section

2284 been overtaken by more recent precedent.  To the contrary, as recently as 2015, the

Supreme Court explained that the rule permitting a single district court judge to dismiss a

"wholly insubstantial or frivolous" claim implicating Section 2284 is premised on the notion

that, "[a]bsent a substantial federal question, even a single-judge district court lacks jurisdiction,

and [thus] '[a] three-judge court is not required.'"  *Shapiro v. McManus*, 136 S. Ct. 450, 455

(2015) (quoting *Gonzalez*, 419 U.S. at 100, with approval).

Although the district court's decision is not crystal clear, the Third Circuit had no

difficulty in concluding that the district court had dismissed LaVergne's claims for lack of

standing.  *Bryson*, 497 F. App'x at 221.  We agree and would add that other portions of the

district court's decision further support the notion that it dismissed the action for lack of

jurisdiction.  Thus, in addition to addressing standing, the district court invoked the "wholly

insubstantial" standard, which is itself a jurisdictional standard, *see Shapiro*, 136 S. Ct. at 455, and, as noted above, it relied on the Supreme Court's order in *Clemons*, directing that a three-judge district court dismiss that reapportionment action "for lack of jurisdiction," 562 U.S. at 1105. *Bryson*, 2011 WL 13192893, at *1–2. Our conclusion that the district court dismissed LaVergne's claims for lack of jurisdiction also disposes of LaVergne's contention that the Third Circuit lacked jurisdiction to decide any issue other than whether the district court had exceeded its jurisdiction. As the Supreme Court has explained, "[i]t is now well settled that refusal to request the convention of a three-judge court" and "dismissal of a complaint by a single judge" for lack of jurisdiction "are reviewable in the courts of appeals." *Gonzalez*, 419 U.S. at 100 & n.19.

LaVergne's arguments to the contrary are insubstantial. He cites *LaRouche* and *Shapiro*, arguing that those cases demonstrate that he was entitled to a three-judge court "due to the nature of his claims." Pl.'s Mem. Opp'n Mot. Dismiss 41–42. In both cases, however, the court held that the single-judge district court lacked jurisdiction to consider the *merits* of the claim. *See LaRouche*, 152 F.3d at 981 (reversing the single-judge district court because it "lack[ed] jurisdiction to decide the *merits* of [the] issue because the question properly belong[ed] before a three-judge district court." (emphasis added)); *Shapiro*, 136 S. Ct. at 455 (reversing "because [the single-judge district court] concluded that the allegations failed to state a claim for relief on the *merits*." (emphasis added)). That proposition has no bearing on *Bryson*, which rejected LaVergne's claims on *jurisdictional* grounds.

We, accordingly, conclude that the justiciability issue was actually and necessarily determined by a court of competent jurisdiction.

### 3. *Would Preclusion Work a Basic Unfairness to the Party Bound?*

The final preclusion factor requires that the Court consider whether barring LaVergne from relitigating the justiciability of his Article the First claim would work a basic unfairness. *Martin*, 488 F.3d at 454. The fairness prong is implicated when the "prior proceeding[] [was] seriously defective," *Yamaha*, 961 F.2d at 254 (quoting *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971)), "when the losing party clearly lacked any incentive to litigate the point in the first trial [and] the stakes of the second trial are of a vastly greater magnitude," *id.*, or when the losing party otherwise lacked the "opportunity to have his challenge heard," *Martin*, 488 F.3d at 455. Although LaVergne raises several arguments why it would be unfair to preclude him from relitigating the justiciability issue in this case, none is substantial.

*First*, LaVergne contends that the failure to appoint a three-judge court in the *Bryson* action violated his Fifth Amendment due process rights. Pl.'s Mem. Opp'n Mot. Dismiss 44–45. To this, LaVergne adds the contention that the Supreme Court's decision in *Shapiro* constitutes an "intervening change in the law" regarding the convening of three-judge courts. *Id.* at 46–47. For the reasons explained above, both arguments are unfounded. A single district court judge may dismiss a reapportionment action for lack of jurisdiction, and *Shapiro* merely confirmed the settled rule that a single district court judge may not act in lieu of a three-judge court with respect to the merits of the plaintiff's claim. 136 S. Ct. at 455.

*Second*, he argues that there exist "differences in the quality or extensiveness of the procedures" applied in this circuit and in the Third Circuit for deciding when to convene a three-judge court. Pl.'s Mem. Opp'n Mot. Dismiss 46; *see* Restatement § 28(3) ("[R]elitigation . . . is not precluded [when] . . . [a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts"). This argument is wrong

for various reasons. As an initial matter, as the Court has explained at length, well-established law from the D.C. Circuit and the Supreme Court support the approach taken by the district court and the Third Circuit in *Bryson*: "A three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts." *Gonzalez*, 419 U.S. at 100. That was not a case, moreover, in which LaVergne received any less process than he claims he would have—or should have—received in this circuit. Indeed, as he requested in his appellate brief in *Bryson*, *Bryson* Appellant's Br. 38–39, that case was decided by three judges—albeit judges sitting as an appellate court rather than a three-judge court—and those judges unanimously held that his Article the First Claim was non-justiciable. In short, LaVergne received no less overall process than he claims he would have received in this circuit. Indeed, he received three levels of review (or potential review), as opposed to the two levels of review that come with a three-judge court.

*Third*, LaVergne argues that, because the district court "never at any time so much as uttered the words or phrases Justiciable, Non-Justiciable, or Justiciability," the court "[n]ever [m]ade [a]ny [a]ctual [r]uling on [j]usticiability." Pl.'s Mem. Opp'n Mot. Dismiss 49 (internal quotation marks omitted). As a result, LaVergne asserts, justiciability was not an issue "within the limited Subject Matter Jurisdiction of the Third Circuit." *Id.* at 50. That contention is also wrong. As explained above, the district court's decision is best construed to have relied on the political question doctrine as a basis for dismissal. But, even if that is not correct, the political question doctrine was properly raised in the Third Circuit, and that defense was plainly "within the subject matter jurisdiction" of that court. *See, e.g.*, *Momenian v. Davidson*, 878 F.3d 381, 390 (D.C. Cir. 2017) ("[A]n appellate court can affirm . . . even if on different grounds than those assigned in the decision under review.") (quoting *Danielsen v. Burnside-Ott Aviation*

*Training Ctr., Inc.*, 941 F.2d 1220, 1230 (D.C. Cir. 1991)); *Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007) (noting that courts of appeals may affirm "on alternative grounds, if applicable").  Indeed, because the political question doctrine implicates the court's Article III jurisdiction, *Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) (explaining that federal courts "lack[] the authority to decide" a dispute implicating political questions); *DaimlerChrysler*, 547 U.S. at 352 (noting that the political question doctrine "originate[s] in Article III's 'case' or 'controversy' language"); *Schlesinger*, 418 U.S. at 215 (explaining that the "political question doctrine[]" is a "jurisdictional limitation imposed upon federal courts by the 'case or controversy' requirement of Art[icle] III"), the Third Circuit would have had a duty to consider the issue *sua sponte*, *see Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *Endeley v. U.S. Dep't of Def.*, 268 F. Supp. 3d 166, 173, 176–78 (D.D.C. 2017) (applying political question doctrine *sua sponte*); *Mahorner v. Bush*, 224 F. Supp. 2d 48, 49 (D.D.C. 2002) (same).

*Fourth*, LaVergne argues that because the Third Circuit summarily affirmed the district court's dismissal without permitting oral argument, he was "denied the right to fully and fairly litigate the issues of [s]tanding and [j]usticiability" and therefore, applying issue preclusion here is "inappropriate."  Pl.'s Mem. Opp'n Mot. Dismiss 50.  The Third Circuit's decision not to have oral argument in *Bryson* in no way undermines the preclusive effect of the judgment.  As the Third Circuit explained, it "summarily affirm[ed] the judgment of the District Court" because LaVergne's appeal did "not raise a substantial question."  *Bryson*, 497 F. App'x at 223.  Before reaching that decision, the court reviewed the extensive briefs filed by the parties, and, as shown by the court's opinion, it carefully considered the arguments.  The Third Circuit's conclusion that

23

LaVergne's arguments were insubstantial, and thus did not warrant oral argument, cannot plausibly undercut the preclusive force of the court's decision.

*Finally*, LaVergne argues that the result in *Bryson* is "[ad]verse to the [p]ublic interest" and therefore should be given no preclusive effect. Pl.'s Mem. Opp'n Mot. Dismiss 51–53. That contention hardly merits discussion. The public interest is furthered by applying settled law, and, here, that law precludes LaVergne from bringing to this Court an issue that was raised and decided in a prior case in which LaVergne had every opportunity to contest the issue. The judicial process requires finality and consistency. LaVergne's efforts to relitigate his case where nothing has changed but the forum would serve neither of those objectives.

We accordingly conclude that application of issue preclusion in these circumstances would not work a "basic unfairness" but, to the contrary, would serve the public interest.

\*   \*   \*

It follows from the foregoing considerations that LaVergne is precluded from disputing that his Article the First claim is non-justiciable. As a result, the Court will grant Defendants' motions to dismiss LaVergne's claims in this action, each of which takes his Article the First claim as a necessary predicate. The Court will also deny LaVergne's motion for sanctions, which is based entirely on his preposterous assertion that Defendants' motions are "legally frivolous." Sanctions Mot. 2.

**B.    Rule 60(b) Motion**

LaVergne also styles his opposition to Defendants' motions to dismiss as a motion to "collaterally attack" the district court's judgment (and the Third Circuit's affirmance of that judgment) in *Bryson* pursuant to Federal Rule of Civil Procedure 60(b)(4). *See* Pl.'s Mem. Opp'n Mot. Dismiss 11–12. In making this extraordinary request, LaVergne once again returns

to his contention that the district court's judgment in *Bryson* is "void" because a single judge, as opposed to a three-judge court, resolved that case. His request fails for multiple reasons. For present purposes, two reasons will suffice.

First, LaVergne previously filed a Rule 60(b)(4) motion in the *Bryson* case, which was denied by the District Court for the District of New Jersey. *Bryson*, slip op. at 2. He is, accordingly, precluded from seeking—once again—to relitigate an issue that was raised and decided by another court. The district court in New Jersey has now twice decided that LaVergne was not entitled to a three-judge court, and LaVergne is not entitled to yet a third bite at the apple. *See* Restatement § 12 (explaining that "[w]hen a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation," except under circumstances not present here).

Second, even apart from that defect, LaVergne's Rule 60(b)(4) motion misconceives the relationship between district courts—even when one of those courts is constituted as a three-judge court. Where a party has reason to believe that an existing judgment is void, "[t]he normal procedure is to file a motion in the court that rendered the judgment." *In re Lodholtz*, 769 F.3d 531, 534 (7th Cir. 2014). And, even if that "bar is not absolute, . . . it is to be lifted only in 'egregious' cases." *Id.* Here, we need not determine the reaches of this exceedingly narrow exception, because the *Bryson* court's decision to dismiss LaVergne's Article the First claim without first convening a three-judge court was far from "egregious." To the contrary, for the reasons explained above, that decision was entirely consistent with Section 2284 and Supreme Court precedent.

The Court will, accordingly, deny LaVergne's motion under Rule 60(b)(4) collaterally attacking the decisions of the District of New Jersey and Third Circuit in *LaVergne v. Bryson*.

## CONCLUSION

The State and Federal Defendants' motions to dismiss the claims of Eugene Martin LaVergne, ECF Nos. 64–65, are hereby **GRANTED**, and Eugene Martin LaVergne is hereby **DISMISSED** from this action. It is further **ORDERED** that Eugene Martin LaVergne's motion collaterally attacking the decision of the District of New Jersey and Third Circuit in *LaVergne v. Bryson*, ECF No. 70, is **DENIED**. It is further **ORDERED** that Eugene Martin LaVergne's motion for sanctions, ECF No. 104, is **DENIED**.

**SO ORDERED**.

/s/ Cornelia T.L. Pillard
CORNELIA T.L. PILLARD
United States Court of Appeals Judge


/s/ Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date: September 6, 2018